Ronald A. MAHERS; Stephen A. Stewart; Edward Black; Laurence Rex; Dale Reese; Michael Morris; Kevin M. Moeller; Kenneth Fry; Billy Joe Armento; Tom Sanders; Marcel Lepier; Richard Winemiller, Plaintiffs–Appellees,

v.

Paul HEDGEPETH, Deputy Warden at the Iowa State Penitentiary, Defendant–Appellant.

No. 94–1455.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1994.

Decided Aug. 16, 1994.

William Hill, Des Moines, IA, argued, for appellant.

Jeffrey Lipman and Brent C. Bedwell, Des Moines, IA, argued, for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Deputy Warden Paul Hedgepeth appeals a district court order holding him in civil contempt for the manner in which security officers at the Iowa State Penitentiary (ISP) searched certain inmates' legal papers. Concluding that the district court punished Hedgepeth for conduct not clearly prohibited by

the 1980 consent decree in *Dee v. Brewer*, we reverse.

## I.

On March 17, 1993, ISP officials received a confidential informant's tip that inmate Ronald A. Mahers had received "a bag of dope" the previous evening. Security officers decided to conduct a shakedown search of Mahers's cell and eleven other inmate cells on ranges A and E of cellhouse 319, where Mahers resided. The twelve inmates were taken to nearby showers while their cells, including any legal papers in the cells, were searched for contraband. No contraband was found.

During or shortly after the searches, various officers on the scene completed "Dee v. Brewer Stipulations" for each inmate whose cell was searched. It is ISP policy to fill out a Stipulation and present it to the inmate before each search of an inmate's legal papers. This policy was adopted to comply with Part IV.C.4. of the July 23, 1980, consent decree in *Dee v. Brewer*, S.D.Iowa Civ. No. 77–102–1, which provides:

> 4. In the absence of exigent circumstances, an inmate's legal papers will not be taken from or searched in his cell or room while the inmate is not present unless the inmate gives prior consent to such a taking or search.

Mahers filed a prison grievance, alleging that the search of his legal papers violated ISP's *Dee v. Brewer* compliance policy. A Grievance Officer sustained the grievance, concluding that an exigent circumstances search "was not authorized by the Acting Warden." [1] When prison officials nonetheless afforded Mahers no grievance remedy, the twelve inmates commenced this action against Warden Hedgepeth, seeking damages under 42 U.S.C. § 1983 and for contempt of the *Dee v. Brewer* decree. The

district court dismissed the § 1983 claims, and the contempt action proceeded to trial.

The evidence at trial established that none of the twelve inmate plaintiffs consented to a search of his legal papers. Prison officials testified that no authorizing official found exigent circumstances and signed the Dee v. Brewer Stipulations before the searches. The various witnesses also disagreed as to whether each inmate was shown his Stipulation and given an opportunity to consent before the cells were searched. (Mahers's Stipulation is the only one of the twelve that is signed by the inmate.) Hedgepeth admitted that the searches did not comply with the ISP procedures adopted to implement the *Dee v. Brewer* decree.

Although the inmates had alleged that no exigent circumstances justified the search of their legal papers outside their presence, the district court made no finding on that issue. Rather, the court found that the prison staff's failure to have an authorizing official make the exigent circumstances determination violated the *Dee v. Brewer* decree. The court held Warden Hedgepeth in contempt "for allowing [staff] to violate the decree" and for failing to train prison officers to follow the ISP *Dee v. Brewer* compliance policy. It ordered Hedgepeth to pay a fine of $6,000,[2] nominal damages of $25 to each inmate, and attorney's fees of $4,800. Hedgepeth appeals that order.

## II.

■ To warrant civil contempt relief, the inmates must prove "by clear and convincing evidence that the decree is being violated." *SapaNajin v. Gunter*, 857 F.2d 463, 465 (8th Cir.1988). "[S]ince consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts." *United States v. ITT Continental Baking Co.*, 420 U.S. 223,

1. A copy of the Dee v. Brewer Stipulation completed for inmate Mahers appears in the Appendix to this opinion. Staff Option 4 on the Stipulation provides that "the Warden or his designee" must approve an exigent circumstances search. Mahers's Stipulation was filled out and signed by two prison staff and by Mahers, but there is no "authorizing official" signature near the bottom of the form.

2. This unconditional fine, payable to the clerk of court, looks like a criminal contempt sanction. *See Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). Though we need not address the issue given our disposition of this appeal, we caution district courts that the distinction between civil and criminal contempt remedies has important constitutional ramifications. *See United Mine Workers v. Bagwell*, —— U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

236–37, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975) (footnote omitted). However, a consent decree differs from most contracts in that it reflects a compromise between hostile litigants, a fact that is often relevant in construing its terms:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms.... Naturally, the agreement reached normally embodies a compromise.... and the resultant decree embodies as much ... as the respective parties have the bargaining power and skill to achieve. For these reasons, *the scope of a consent decree must be discerned within its four corners,* and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised ... *the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.*

*United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) (emphasis added) (footnote omitted), followed in *ITT,* 420 U.S. at 233–34, 95 S.Ct. at 933.

▪ We conclude that the district court has held Warden Hedgepeth in contempt for conduct not proscribed "within [the] four corners" of the *Dee v. Brewer* decree. The court held that prison staff violated the decree when they failed to follow ISP procedures for complying with that decree. The decree provides, however, that "in the absence of exigent circumstances, an inmate's legal papers will not be taken from or searched in his cell or room while the inmate is not present unless the inmate gives prior consent to such a taking or search." Nowhere does the decree incorporate by reference the ISP compliance policy, nor does it specify what, if any, additional procedures are required. Holding Hedgepeth in contempt because his staff disobeyed procedures not mandated by the decree violates the fundamental principle that, "[b]efore a party can be held in contempt for violating a court order, he must have actual knowledge of the order and the order must be 'sufficiently specific to be enforceable.'" *Hazen v. Rea-*

*gan,* 16 F.3d 921, 924 (8th Cir.1994). *Compare Glover v. Johnson,* 934 F.2d 703, 712 (6th Cir.1991) (no contempt for failure to provide inmate vocational training that was to be required by a supplemental order never filed); *Wallace Clark & Co. v. Acheson Indus., Inc.,* 401 F.Supp. 637, 638–39 (S.D.N.Y. 1975) (patent licensing agreement not included in consent decree could not be the basis for contempt), *aff'd,* 532 F.2d 846 (2d Cir.), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976).

The inmates argue that ISP's compliance policy should be deemed a part of the *Dee v. Brewer* consent decree by reason of an April 23, 1982, Report and Recommendation by U.S. Magistrate (now District Judge) Longstaff recommending the denial of defendants' motion to modify Part IV.C. so as to reduce compliance burdens. We agree that a judicial order construing a consent decree may be the basis for holding in contempt—in a later proceeding—one who has knowingly violated the decree as construed. But we conclude that Magistrate Longstaff's Report does not provide a basis for affirming the contempt order in this case because the inmates did not properly raise this issue in the district court. If they wished to prove that Warden Hedgepeth violated the *Dee v. Brewer* decree *as construed by Magistrate Longstaff,* they should have put his Report into evidence, proved that it was later adopted by the district court as a binding decree, proved that Hedgepeth had adequate notice of its strictures to be held in contempt, and so forth.

## III.

District courts have many remedial powers to ensure that their decrees are fully and faithfully obeyed. The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed. "Even in a public law case, our review will proceed more searchingly when, as here, we are confronted with a finding of contempt than when we are called upon to consider a finding exonerating a putative contemnor from a charged contempt." *Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir.1991). Because the district court's contempt order was not based upon a finding that prison officials searched the inmates' legal papers "in the

absence of exigent circumstances," its Ruling on Contempt Action dated January 13, 1994, must be reversed.

*APPENDIX*

### IOWA STATE PENITENTIARY

Fort Madison, Iowa

### LEGAL DOCUMENT INSPECTION

(Dee v. Brewer Stipulation)

Any search of an inmate's legal papers will be made only to detect the presence of contraband. An inmate's legal papers will not be read. Employees are to conduct one of the following procedures during an inmate cell or bed area shakedown.

INMATE OPTION: (Check One)

_____ 1. The inmate requests that his legal papers be searched in his presence and observation. The inmate will transport the papers to the holding area at the completion of the inspection.

_____ 2. The inmate waives his right to be present during the search of his legal papers and the legal papers will be searched after the inmate is taken to the holding area.

| 206153 Mahers | X Ron Mahers |
|---|---|
| Inmate Name (Print) | Inmate Signature and Number |

STAFF OPTION: (Check One)

_____ 3. If the inmate refuses to cooperate or to select option 1 or 2, the legal papers will be searched after the inmate is taken to the holding area.

__X__ 4. During exigent circumstances and with the approval from the Warden or his designee, prior consent to search the legal papers will not be obtained from the inmate.*

| Hupp | Date: | 3–17–93 |
|---|---|---|
| Signature    Title    (Print Name) | | |
| | Unit: | 319 |
| Bohrenkamp | | |
| Signature    Title    (Print Name) | Cell or Bed Number: | A–2 |
| | Time: | 3:00 1558 |
| Signature    Title    (Print Name) | | |

* The authorizing official for option 4 must sign this form below.

Date: _____

Signature    Title    (Print Name)

NOTE: PLACE THIS FORM IN THE INMATE'S FILE IN THE RECORD OFFICE.
Amended: 10–15–85