# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 13-6043

_____

In re: Jeffrey A. Fischer, also known as Jeffrey Allen Fischer, also known as
Fischer Farms; Melanie J. Fischer, also known as Melanie Jean Fischer, also
known as Fischer Farms

*Debtor*s

------------------------------

Jeffrey A. Fischer; Melanie J. Fischer

*Debtors - Appellants*

v.

Great Western Bank, as successor-in-interest to TierOne Bank

*Creditor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Nebraska - Lincoln

_____

Submitted: October 17, 2013
Filed: November 18, 2013

_____

Before FEDERMAN, Chief Judge, KRESSEL and NAIL, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

The debtors, Jeffrey A. Fischer and Melanie J. Fischer, filed a motion requesting findings of contempt against Great Western Bank, a creditor. The bankruptcy court[1] denied the motion. For the reasons that follow, we affirm.

BACKGROUND

The Fischers are family farmers. In 2005 they obtained a loan from TierOne Bank, appellee Great Western Bank's predecessor-in-interest, for the financing of farm operations and the purchase of machinery. As a result, the bank received a perfected security interest in the Fischers' crops, farm products and livestock.

On January 21, 2008, the Fischers filed a Chapter 12 bankruptcy petition. On October 24, 2008, their plan was confirmed. Pursuant to their confirmed plan the Fischers were required to pay all real estate taxes assessed against their property, including delinquent taxes. The Fischers failed to make these payments as required by the plan. Concerned about their collateral, on September 16, 2010, the bank filed a motion to compel the Fischers to pay delinquent real estate taxes.

On November 17, 2010, the parties entered into a stipulation resolving the motion to compel payment of delinquent property taxes. The stipulation called for the Fischers to liquidate their cattle and distribute the proceeds in a specified manner. The Fischers would then file affidavits to attest that a sale had been conducted and report where the proceeds went. If the Fischers fulfilled their obligations, then the bank was to release its security interest in the cattle and the present and future crops.

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

2

Specifically, the stipulation provided, in part:

> *Subsequent to the Cattle sale and distribution of the proceeds from such sale in accordance with Paragraph 3 hereof and upon Debtors' providing the Bank with affidavits, in a form acceptable to the Bank .... Bank shall cause to be filed with the Nebraska Secretary of State's Office an Amended UCC Financing Statement and Effective Financing Statement, releasing the Bank's security interest in the Cattle, and in the Debtors' then present and future crops.*

The stipulation was approved by the bankruptcy court in a text order on November 18, 2010. The order approving the stipulation read:

> *Order APPROVING. The stipulation is approved, except for paragraph 7(a) and (b). A motion for relief is required before the bank may take action which is contrary to the automatic stay. Movant is responsible for giving notice to parties in interest as required by rule or statue. HEREBY ORDERED by Judge Timothy J. Mahoney.*

The Fischers complied with the terms of the stipulation in February 2011. They then executed an amended financing statement concerning the security interest in the cattle and the crops. The amended financing statement was received by the bank sometime in early March 2011. The bank did not immediately file it.

Shortly thereafter the Fischers needed money to purchase items necessary to plant and maintain their 2011 crops. Under the assumption that the bank had released its liens, Mr. Fischer applied for a loan from People's-Webster County Bank. A banker at People's-Webster informed him that the bank had not released its liens, and therefore the Fischers were unable to obtain the loan. The Fischers notified the bank of its failure to release the liens. On June 17, 2011, the bank filed an amended UCC financing statement releasing the liens.

The Fischers then filed a motion with the bankruptcy court requesting that the bank be found in contempt for violating the November 2010 order approving the stipulation[2]. They claimed that the bank's failure to timely release the liens, in accordance with the stipulation, negatively affected their 2011 and 2012 crops because they were unable to obtain a subsequent loan to support the crops.

The bankruptcy court denied the Fischers' motion. The court reasoned that there was no time frame within which the bank was required to file an amended UCC financing statement. The bank did file the statement and release the liens in compliance with the stipulation; therefore, it could not be found in contempt. The court also held that while the bank's failure to file the financing statement may have been negligent it did not rise to the level of contempt. The Fischers filed their timely notice of appeal on July 15, 2013.

---

[2] The Fischers also moved the court to find the bank in contempt of an August 2010 order and to find the bank in violation of the automatic stay. These motions were also denied by the bankruptcy court. The Fischers did not appeal from the orders denying those motions.

4

STANDARD OF REVIEW

We review the bankruptcy court's denial of the motion for contempt "for abuse of discretion, giving plenary review to conclusions of law and reviewing factual findings for clear error." *Wright v. Nichols*, 80 F.3d 1248, 1250 (8th Cir. 1996).

We may affirm the bankruptcy court's order on any basis supported by the record, even if that ground was not considered by the trial court. *Mid-City Bank v. Skyline Woods Homeowners Assoc. (In re Skyline Woods County Club, LLC)*, 431 B.R. 830, 836 n.16 (B.A.P. 8th Cir. 2010).

ANALYSIS

The Fischers correctly cite the standard for finding a party in civil contempt: the movant must prove that the offending party violated a specific order of which he or she was aware. *Koehler v. Grant*, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997). The Fischers argue that the bankruptcy court abused its discretion because it incorrectly applied the law by finding that the bank's negligence did not amount to contempt. Negligence is not a factor to be considered when determining if a party is in contempt of a court order. Additionally, the Fischers reiterate their argument that the bank is in contempt because it knew about the order approving the stipulation and violated it by not timely releasing its liens.

The Eighth Circuit has articulated a high standard for contempt findings. It has held that no one should be held in contempt for violating an ambiguous order; a finding of contempt should be clear and certain. *Imageware, Inc. v. U.S. W. Commc'ns*, 219 F.3d 793, 797 (8th Cir. 2000). Contempt must be carefully and precisely employed. *Mahers v. Hedgepath*, 32 F.3d 1273, 1275 (8th Cir. 1994). Civil contempt is available only where a court order exists and can properly be enforced.

5

*Russell v. Sullivan*, 887 F.2d 170 (8th Cir. 1989). If the underlying order contains no operative commands, only abstract legal conclusions or compels no action then a finding of contempt is not warranted. *See Int'l Bhd. of Electr. Workers, Local Union No. 545 v. Hope Electr. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002).

Other circuits have also been cautious in utilizing the contempt powers. The First Circuit has held "for a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion." *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991). The Supreme Court has stated, "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).

While the parties' stipulation imposed duties on the bank, the order did not. The text of the order did not incorporate the terms of the stipulation. Nor did the order state that the parties were required to abide by the terms of the stipulation.

The order did not impose any operative commands or express prohibitions upon the parties. It stated, "....The stipulation is approved, expect for paragraphs 7(a) and (b)...." This text is merely an abstract legal conclusion. It does not leave the parties with no reasonable doubt as to what is expected of them. For instance, it would not have been unreasonable for the parties to believe that the stipulation was being reviewed by the court to determine the feasability of the stipulation, not to ensure compliance. The order does not require or prohibit action by either party, therefore, contempt is not an available remedy.

This is not to say that an order approving a stipulation will never be enforceable by the contempt powers. *See e.g., Stein and Day, Inc., v. Coordinated Sys. and Serv. Corp. (In re Stein and Day, Inc)*, 83 B.R. 221 (Bankr. S.D.N.Y. 1988).

However, the facts of this case are different from those in which the courts have employed the contempt powers to strictly enforce a stipulation. Generally, in those cases, there is clear and unambiguous language that the terms of the stipulation are ordered by the court and enforceable by contempt. In this case, there was no such language in the order.

Alternatively, even if the order was sufficiently clear and certain, contempt would still not be available because of the indefinite characteristics of the stipulation itself. The stipulation stated that the bank was to "subsequently" file an amended financing statement after the Fischers distributed the proceeds from their cattle sale. The word "subsequent" is ambiguous. It does not provide a time structure for when the bank was required to release the lines. The bank did release the liens, albeit not within the Fischers' desired time frame, in compliance with the stipulation.

CONCLUSION

Because the order approving the stipulation was not clear, unambiguous or certain, the bankruptcy court's denial of the motion for contempt is affirmed.

———————————